FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2021 NOV 17 PM 3:48
CLERK'S OFFICE
AT GREENBELT
BY JW DEPUTY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
***Southern Division***

| | | |
|---|---|---|
| **ANTONIO CROSBY,** | * | |
| **Plaintiff** | * | |
| **v** | * | **Civil Action No. GJH-21-78** |
| **WARDEN JEFF NINES,[1] and OFFICER CODY GILPIN,** | * | |
| | * | |
| **Defendants** | | |

***

## MEMORANDUM OPINION

Pending is a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants Warden Jeff Nines and Corrections Officer II Cody Gilpin in response to Plaintiff Antonio Crosby's Complaint filed pursuant to 28 U.S.C. ¶1983. ECF 10. Crosby filed an opposition with verified exhibits and declarations. ECF 21. For the reasons stated below, Defendants' dispositive motion is GRANTED in part and DENIED in part.

### I. Background

#### A. Complaint

Crosby is a Maryland state inmate presently housed at North Branch Correctional Institution ("NBCI"). In this Complaint, which he filed pro se, Crosby alleges that Officer Gilpin used excessive force against him on February 6, 2020 at 10:30 a.m. in front of the NBCI hearing room and during the escort back to his cell in retaliation for using the Administrative Remedy Process ("ARP") to complain about "false reports."[2] Complaint, ECF 1 at 3-4. The Complaint

---

[1] The Clerk will amend the docket to reflect Defendants' full names.

[2] The Complaint alludes to a "pattern by the officers" of writing Crosby up for inmate rule violations which he describes as "false reports." ECF No. 1 at 4. Crosby, however, does not allege Warden Nines or Officer Cody Gilpin wrote a inmate rule violation or false report against him. ECF No. 1 at 4. If Crosby intends to pursue claims against

alleges that while Crosby was wearing handcuffs, Gilpin pushed Crosby to the ground and pulled his hands up to his upper back. Gilpin then "took the handcuffs and raised [Crosby] up and aggressively pulled [Crosby] to [his] cell…." *Id.* Crosby claims he suffered shoulder and upper back injuries, was unable to use his arms for three weeks, and lost feeling in his arms. He claims Gilpin refused him medical treatment. Officers on the next shift took Crosby to the medical unit. Crosby seeks damages of $250.000 for excessive force, $50,000 for "mental and emotional injury," to be "removed from NBCI" and to have "all retaliation infractions […] removed from [his] base file." *Id.* at 4.

Crosby has filed an affidavit executed by fellow inmate Donald R. Pevia who attests that on February 6, 2020, he was confined in Housing Unit #1, B Tier, Cell #3, where he observed Officer Gilpin assaulting Crosby. ECF 21-10 at 1. Pevia states that "[h]alfway up the steps without warning or justification Gilpin jacked Crosby's arms up in the air forcing him to bend at the waist." *Id.*

**B. Defendants' Response**

Defendants' dispositive motion is supported by verified copies of Crosby's prison records and declarations.[4.] In his declaration, Gilpin denies using excessive force on Crosby, stating that "[a]t no time during this escort did I force Antonio Crosby to the ground, or force his arms or hands upward toward his upper back in an aggressive manner with the intention of causing pain." Declaration of Cody Gilpin, ECF 10-5 ¶ 5. Gilpin states that he maintained a "hands-on escort" of Crosby until they reached their destination.[3] *Id.* Inmates attending adjustment hearings are

---

other officers, he may file a separate complaint. The Clerk shall send him a complaint form and information packet should he wish to do so.

[3] The record does not provide additional explanation about a "hands-on escort."

handcuffed behind their backs. *Id.* ¶ 4. Further, Gilpin states he has never harassed or retaliated against Crosby for any reason and has no knowledge of any other NBCI officer doing so. *Id.* ¶ 9.

The record evidence shows that Crosby reported a use of force incident to Lieutenant Janet Puffenbarger at approximately 4:55 p.m. on February 6, 2020. ECF 10-2 at 39. Crosby was photographed at 5:52 p.m. after reporting the assault. ECF 10-2 at 43-49. Crosby was then evaluated by Kimberly Ventura, R.N., who noted on the medical report completed at 8:52 p.m. that:

> Assessment was done on patient at 1850 in the exam room of HU1 with officers present. When medical entered the building of HU1, it was noted that patient was in a holding cell near the exam room waiting to be seen and he was seen on the floor doing push-ups with his arms. He smiled when spoken to.
>
> Patient was assessed and asked where he was injured, since he had his shirt off and there wasn't any wounds or bruising seen on his body. Patient stated that the handcuffs had left marks on each of his wrists. It was noted that each of his wrists are slightly red from the handcuffs with the markings of where there is a handcuff on each wrist. Patient stated that the middle of his back, which was observed located in the lumbar area of his back, was tender when touched, which he stated he believes comes from his arms being pulled up behind his back injuring his muscles there. Patient also stated that each of his shoulders were painful when touched as well, due to his arms being pulled up behind his back by the officer. Patient was wanting to have an x-ray done and cold compresses applied, but was told that the provider would have to order those once being seen. Patient was pleasant and cooperative, but seemed to be in a daze at times after being assessed. He was asked if there was anything else that he needed to say and he replied, "just put it in my records so it will be there to get when I need it." He got up from the exam table without difficulty and was taken back to his cell by the officers when released by medical.

ECF 10-2 at 40.

Investigations were initiated into Crosby's allegations of assault and denial of medical treatment. Lieutenant Puffenbarger reported the allegations to the Intelligence and Investigations Division ("IID") on February 6, 2020. *Id.* at 39; ECF 10-4 at 2-6. Additionally, on February 7,

2020, Crosby filed ARP NBCI-0269-20. Declaration of Joseph H. Cutter, Declaration ECF 10-6 ¶ 4; ECF 10-2 at 36. Captain Cutter reviewed "the available surveillance video footage associated with" the allegations and found "no evidence of Officer Gilpin assaulting Antonio Crosby…." *Id.* ¶ 6. Specifically, Cutter "observed Inmate Antonio Crosby being escorted by a uniformed Correctional Officer—whom I understood to be C.O. II Cody Gilpin based upon institutional records—to and from the adjustment hearing room. At no point in the footage did Inmate Crosby appear to have any injury." Second Declaration of Joseph H. Cutter, ECF 20-2 ¶ 4. ARP NBCI-0269-20 was procedurally dismissed "in accordance with COMAR 12.02.28.11 because it was under IID investigation. ECF 10-6 ¶ 7; ECF 10-2 at 36.

Cutter states "the video data was not archived as it revealed no relevant information." *Id.* Cutter explains that institutional policy provides that daily video footage from the surveillance cameras in the institution is not stored indefinitely unless the footage from a specific camera is archived and preserved at the direction of Correctional Supervision for purposes which include instances of assault and institutional distance. Second Declaration of Joseph H. Cutter, ECF 20-2 ¶ 4. NBCI uses a system that allows current video footage to record over older footage after an unspecified amount of time, generally thirty days. Video is not commonly archived upon inmate request. *Id.*

Detective Sergeant T. Pressman conducted the IID investigation into Crosby's allegations. The IID investigative report reads in relevant part:

> On March 27, 2020, I spoke with nurse Ventura at NBCI. Nurse Ventura stated that she walked into the area to treat Inmate Crosby and she observed him doing push ups and exercising. Nurse Ventura stated that this was before she did her exam. Nurse Ventura stated that during the exam she did not observe any injuries to Inmate Crosby and he was sent back to his cell with no problems.

> On April 2, 2020, I interviewed hearing Officer Jamie Farris. Officer Farris stated that during the Administrative hearing there were no problems. Officer Farris stated that he found Inmate Crosby guilty of his infractions and he was upset but did not cause any problems. Officer Farris stated that Inmate Crosby left the hearing with no problems. Officer Farris informed me that Officer Gilpin that Inmate Crosby was complaining about was Officer Cody Gilpin. [sic] This concluded the interview.
>
> On April 1, 2020, I spoke with Capt. Cutter and he made contact with Inmate Crosby on 4/2/2020 at NBCI. Inmate Crosby still could not identify which Officer it was and could not provide any other information. Lt Cutter stated there is [sic] three Officer Gilpins that work at NBCI.
>
> On 4/21/2020, I interviewed Officer Cody Gilpin at NBCI. Officer Gilpin stated that he did not remember anything about the incident. Officer Gilpin stated he has not had any problems at the hearing. This concluded the interview.

IID Report, No. 20-35-002710, ECF 10-4 at 5-6.

After reviewing the evidence and witness interviews, Detective Sergeant Pressman determined that there was insufficient evidence to bring assault charges and "no injuries to Inmate Crosby" and recommended closing the investigation. IID Report, No. 20-35-002710, ECF 10-4 at 5-6.

## II. Standard of Review

Defendants have filed their Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment when matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). The notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature, *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, Crosby has filed an affidavit requesting discovery in this matter, including copies the IID reports and relevant video footage. ECF 17-1. As noted, Defendants have provided verified declarations stating the video was copied over and is no longer available. Defendants also provided the declaration of Nicole M. Miraglia,

Administrator which states a complete copy of all reports and documents prepared as part of the IID cases were provided as an attachment to Defendants' dispositive motion. ECF 20-1 ¶¶ 3, 4.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## III. Discussion

### A. Eleventh Amendment

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). The State of Maryland has not waived such

immunity for claims brought pursuant to § 1983. Accordingly, Warden Nines and Officer Gilpin are immune from suit for actions taken in their official capacities.

**B. Warden Nines**

In order to state an individual capacity claim, a plaintiff must allege personal participation by the defendant to demonstrate that defendant violated the prisoner's rights protected under § 1983. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). For a supervisor to be liable, a plaintiff must prove that (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Crosby does not allege any personal involvement by Warden Nines. Rather, Crosby contends that Nines is legally responsible because he is responsible for welfare of all inmates at NBCI. ECF 21 ¶ 3. Crosby has failed to plead or suggest facts sufficient to demonstrate a supervisory liability claim against Nines for Gilpin's purported actions. Accordingly, the claims against Nines in his individual capacity will be dismissed.

**C. Officer Cody Gilpin**

To establish an Eighth Amendment violation for excessive force an inmate must establish both that the prison office subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). For the subjective element, an inmate must show that the plaintiffs used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

For the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson,* 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Id.* at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate a defendant's action or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Officer Gilpin's dispositive motion, supported by his declaration denying Crosby's allegations of assault, the IID report, the medical report from February 6, 2020, photographs, and Captain Cutter's declarations concerning the content and current unavailability of the video recording is refuted by Crosby's opposition in the form of an affidavit (ECF 21) and witness Donald Pevia's declaration. Whether the alleged assault occurred raises questions of credibility that preclude award of summary judgment. Viewing the evidence in the light most favorable to Crosby, this case presents genuine issues of material fact about whether (1) Officer Gilpin used excessive force during his escort of Crosby and (2) denied him medical care in violation of the Eighth Amendment. Arguably no visible serious injury to Crosby is evident from the single medical report and the photographs in the record. Nonetheless, Defendants' dispositive motion and Gilpin's declaration fail to deny or address Crosby's claim that he was denied treatment for an injury and suffered consequences for three weeks. Because discovery is necessary to complete the factual record, summary judgment is premature as to the claims against Gilpin. Crosby's request for appointment of counsel (ECF 15) shall be granted to ensure discovery is conducted properly. Crosby will be provided pro bono counsel for the limited purpose of representing him during discovery.

## IV. Conclusion

For these reasons, Defendants' dispositive motion is GRANTED as to Warden Nines and DENIED as to Officer Crosby. The claims against Warden Nines will be dismissed. Crosby will be provided pro bono counsel for the purposes of conducting discovery. A separate Order shall issue.

11/8/2021
Date

GEORGE J. HAZEL
United States District Judge